UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE | ) |
| | ) |
| GREGORY AND NARVEL ROBSON | ) No. 07 B 3691 |
| | ) |
| Debtor. | ) |
| | ) |

## MEMORANDUM OPINION ON
## MOTION TO MODIFY AUTOMATIC STAY

This proceeding relates to the Chapter 13 bankruptcy case filed by Gregory and Narvel Robson ("Debtors"). Ford Motor Credit Company ("Ford") moved to modify stay with respect to a debt secured by a lien on a 2001 Ford Windstar motor vehicle and a 2002 Ford Escape motor vehicle (the "Vehicles"). It asserted that Debtors were not providing Ford with adequate protection for its collateral. Amendments to the Bankruptcy Code, enacted pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") apply to this bankruptcy case.

Section § 1326 of the Bankruptcy Code, as amended by BAPCPA, requires a debtor to make adequate protection payments to a creditor holding an allowed claim secured by personal property, and to do so within 30 days after filing of the bankruptcy petition. 11 U.S.C. § 1326(a)(1)(C). At the evidentiary hearing on this Motion, one issue was as to the appropriate method of calculating adequate protection payments on the Vehicles. For reasons set forth below, it is held that a debtor must make monthly adequate protection payments under 11 U.S.C. § 1326(a)(1)(C) in the amount of each vehicle's depreciation, and that depreciation is to be measured over the first month after a debtor files a bankruptcy petition.

## JURISDICTION AND VENUE

Jurisdiction lies under 28 U.S.C. § 1334. The case has been referred to this Court under Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G). Venue is proper under 28 U.S.C. § 1409(a).

## UNDISPUTED FACTS

1. On October 31, 2001, Debtors purchased a 2001 Ford Windstar ("Windstar") and obtained a loan from Ford secured by the vehicle to complete the purchase. (Ford Ex. 3.) On July 30, 2002, Debtors purchased a 2002 Ford Escape ("Escape") and obtained a loan from Ford secured by the vehicle to complete the purchase. (Ford Ex. 1.)

2. On March 2, 2007, the Debtors filed that petition for Chapter 13 relief ("Petition Date"). As of the Petition Date, Debtors owed Ford $11,559.54 on the Windstar and $9,833.00 on the Escape. (Motion to Modify Automatic Stay ¶ 2-3.) Prior to the Petition Date, Debtors were paying $502.71 per month on the Escape and $611.60 per month on the Windstar under their Retail Installment Contracts with Ford. (Ford Ex. 1, 3.)

3. Debtor Gregory Robson testified that he operates a painting business for which he uses one of the vehicles. Debtor Narvel Robson testified she uses the other vehicle to drum up business for her husband. Therefore, the Vehicles are necessary to Debtors' reorganization.

4. Debtors' original proposed plan provided for monthly payments to Ford of $50 on the Windstar and $75 on the Escape until November 2007 when the payments were to increase to $100 on the Windstar and $200 on the Escape. (Ford Ex. 5.)

2

5. On April 4, 2007, Ford brought this Motion asserting lack of adequate protection of its interests in the Vehicles.

6. On April 17, 2007, Debtors filed a modified plan proposing to pay Ford $200 per month on the Escape and $150 per month on the Windstar. (Debtors' Ex. J.)

7. At the evidentiary hearing on the Motion, Debtors and Ford presented evidence on the depreciation of the Vehicles based on the N.A.D.A. Official Used Car Guide ("N.A.D.A. Guide"). Neither party presented other expert testimony on the depreciation of the Vehicles, nor evidence giving details as to the condition of the Vehicles. Based on evidence presented, the Vehicles depreciated as follows during the first month after bankruptcy was filed: Windstar at $150 and the Escape at $200.

8. Any facts contained in the discussion below shall constitute additional undisputed facts.

## DISCUSSION

The issue presented is how to calculate what a debtor must pay a creditor under 11 U.S.C. § 1326(a)(1)(C) in order to provide the creditor with adequate protection for a vehicle that serves as collateral.

Section § 1326 of the Bankruptcy Code provides:

> (a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount–
> (A) proposed by the plan to the trustee;
> . . . .
> (C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under

3

> subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

This provision requires a debtor to provide adequate protection payments to a creditor when three elements are present. First, a portion of the creditor's claim must become due after the order for relief, which in most cases is the filing of the bankruptcy petition. Id.; 8-1326 COLLIER ON BANKRUPTCY ¶ 1326.02(1)(a) (15th ed. rev. 2006). Second, the creditor's claim must arise out of an obligation that debtor undertook to purchase the property. Third, the debtor himself must have purchased the property securing the claim. Henry J. Sommer, Trying to Make Sense Out of Nonsense: Representing Consumers Under the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005", 79 AM. BANKR. L. J. 191, 228 (2005). The parties do not dispute that all three elements are present here. Thus, Debtors must provide Ford with adequate protection.

Congress amended § 1326 under BAPCPA to provide for pre-confirmation adequate protection payments in order to prevent a frequent problem in bankruptcy cases. In re DiSardi, 340 B.R. 790, 809 (Bankr. S.D. Tex. 2006). Previously, the Bankruptcy Code did not require adequate protection payments and some Chapter 13 debtors did not provide payments to car lenders at the beginning of their plans. Id. at 810. As a result, some lenders waited months before receiving payments from debtors while debtors continued to use the depreciating collateral. Id.; Ricardo I. Kilpatrick, Selected Creditor Issues Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 AM. BANKR. L. J. 817, 836 (2005). In the worst cases, while lenders waited for payments, some debtors converted their cases to ones under Chapter 7 and surrendered the collateral without compensating the lender for its depreciation during the periods prior to

4

conversion. In re DiSardi, 340 B.R. at 810. § 1326 now requires adequate protection payments to prevent these results. Id.

However, first, it must be determined what is adequate protection for purposes of § 1326. The Bankruptcy Code does not define adequate protection, but § 361 of the Code provides:

> When adequate protection is required under Section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

A United States Supreme Court opinion addressed the issue of adequate protection under § 361 in United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd. 484 U.S. 365 (1988). The opinion said that a secured creditor's interest in property is not adequately protected if the property is depreciating during the automatic stay. Id. at 370. In such a situation, the creditor is entitled to cash payments or additional security in the amount of the decline in value. Id. Opinions have frequently held that the amount of depreciation, as discussed in Timbers, is the appropriate amount for pre-confirmation adequate protection payments on a debtor's vehicle under § 1326. See e.g. In re Brown, 348 B.R. 583, 594 (Bankr. N.D. Ga. 2006); In re Combs, No. 06-10872-WHD, 2006 Bankr. LEXIS 2515, at *5 (Bankr. N.D. Ga. Aug. 3, 2006); 8-1326 COLLIER ON

BANKRUPTCY ¶ 1326.02(1)(c) (15th ed. rev. 2006). Thus, for Debtors to provide adequate protection under § 1326 of the Bankruptcy Code, they must compensate Ford for depreciation of the Vehicles.

How should such depreciation be calculated? Various methods have been employed. In addressing depreciation, not only the value of a vehicle at a given time must be determined, but also which particular time periods to utilize in calculating depreciation. In Chapter 13 cases, opinions generally agree that they can determine the value of a vehicle at a given time using guides relied upon in the industry. In Re Cook, 205 B.R. 437, 440-41 (Bankr. N.D. Fla. 1997); Brown, 348 B.R. at 588; Ricardo I. Kilpatrick, Selected Creditor Issues Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 AM. BANKR. L. J. 817, 836 (2005). These guides qualify as exceptions to the hearsay rule under Federal Rule of Evidence § 803(17). While there are a variety of such guides, opinions often refer to the N.A.D.A. Official Used Car Guide (the "N.A.D.A. Guide"), also known as the Blue Book Guide.

On the other hand, in determining which particular time periods to utilize in calculating the depreciation of a vehicle, opinions vary widely. Some simply look to the value listed in a guide on the date the debtor files the petition and order the debtor to pay a fixed percentage of that value each month as adequate protection. In re Beaver, 337 B.R. 281, 285 (Bankr. E.D.N.C. 2006) (using one percent); In re Hill, No. 06-80502, 2007 WL 499622, at *4 (Bankr. M.D.N.C. Feb. 12, 2007) (using one percent); In re DiSardi, 340 B.R. 790, 806 (Bankr. S.D. Tex. 2006) (using one and a half percent). That device can perhaps be used as a presumptive rate of depreciation only until some party is willing to offer specific evidence on the issue.

Other opinions and commentators look to values of vehicles over some period preceding the bankruptcy filing to calculate depreciation. Cook, 205 B.R. at 440-41 (averaging the rate of decline

in the vehicle's value in the three months before the filing of the petition); Ricardo I. Kilpatrick, Selected Creditor Issues Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 AM. BANKR. L. J. 817, 836 (2005) (suggesting a court average the depreciation in the six to twelve months prior to the filing); Brown, 348 B.R. at 594 (looking at the vehicle's depreciation from the filing of the petition to the date of confirmation or dismissal); 8-1326 COLLIER ON BANKRUPTCY ¶ 1326.02(1)(c) (looking at the change in the vehicle's value over the "previous few months").

We have found no opinions in this District addressing the appropriate method for calculating a vehicle's depreciation.

Debtors argue for the method used in Brown, utilizing the vehicle's depreciation during the period after filing of the bankruptcy petition until the date of confirmation or dismissal. They offered evidence from the N.A.D.A. Guide which showed that the Escape depreciated by $200 and the Windstar depreciated by $150 in the month after the Petition Date. (Debtors' Ex. A, B, C, D.) Debtors argue any depreciation before the Petition Date is irrelevant in determining future depreciation of the Vehicles. Moreover, a vehicle generally depreciates the most when it is new, then less and less as the vehicle ages. Debtors therefore argue that paying Ford for the depreciation that occurred in the first month after the Petition Date will provide adequate protection because depreciation in future months is likely to be less than the depreciation in the first month.

Ford raises a number of contrary arguments. First, its counsel argues under § 1326 (a)(1)(C) of the Bankruptcy Code that a debtor must make the full payments required in the retail installment contract in order to provide a creditor with adequate protection (". . . that portion of the obligation

that becomes due after the order for relief..."). However, part (C) applies "unless the court order otherwise" as § 1326(a)(1) makes clear, so it is not mandatory and the court may order otherwise.

In the alternative, Ford argues that the amount of depreciation should be determined by expert testimony. Without an expert, Ford argues that all of the factors necessary to determine the depreciation of a particular vehicle, such as the condition of that vehicle, cannot be taken into account. Finally, Ford argues that if the N.A.D.A. Guide or other similar guide is to be used to determine the depreciation of a vehicle, the average depreciation over three or four months should be used rather than the depreciation in just one month. Ford argues that vehicles do not depreciate at the same rate each month, therefore, utilizing one month's depreciation will not result in an accurate rate of depreciation. Ford asserts that averaging the depreciation over three or four months, even pre-petition months, will lead to a more accurate rate of the vehicle's depreciation post-petition. For example, it argues according to the N.A.D.A. Guide that the Escape has depreciated $900 in the three months prior to bankruptcy, resulting in an average depreciation of $300 per month. (Ford Ex. 9-10.); (Debtors Ex. A, B, C, D.) Debtors' proposed plan, however, provides Ford with adequate protection payments in the amount of $200 per month.

Considering evidence taken in this case as well as precedent on this issue, it is held that adequate protection under § 1326 should be calculated using the amount a vehicle depreciates in the first month following filing of the bankruptcy petition. Generally, vehicles depreciate the most when they are newest and the depreciation becomes less as the vehicle ages. William C. Whitford, Symposium: Consumer Bankruptcy and Credit in the Wake of the 2005 Act: A History of the Automobile Lender Provisions of BAPCPA, 2007 U. ILL. L. REV. 143, 178 (2007). As a result, calculation of depreciation over the period post bankruptcy protects a creditor because the amount

8

of depreciation is likely to be less as time progresses. A debtor or creditor may provide more specific evidence or expert testimony on the depreciation of a particular vehicle. But in the absence of such evidence, the first month's depreciation after bankruptcy will provide the best measure of adequate protection to the creditor under § 1326 of the Bankruptcy Code.

Certainly, a debtor need not make the payment required in the retail installment contract to provide adequate protection to a creditor; that was clear in <u>Timbers</u>. 484 U.S. at 370 (stating that if the collateral is declining in value, adequate protection is cash payments in the amount of the decline, not in the amount of the contractual payments). As noted the BAPCPA changes did not mandate a different result.

Chapter 13 debtors are not required to provide costly expert testimony concerning depreciation of their motor vehicles. Such testimony may be beyond the means of many Chapter 13 debtors and courts may rely on other admissible testimony even if it is less precise than testimony of a car expert. Indeed, this case, neither Debtors nor Ford offered expert testimony concerning value of the Vehicles or depreciation. Nor did the parties offer any evidence regarding the particular conditions of the Vehicles or other factors that may effect the rate at which the Vehicles are depreciating.

Decisions must be made based on the evidence received. The evidence from the N.A.D.A. Guide demonstrated that the deprecation in the month following the Petition Date was $200 for the Escape and $150 for the Windstar. (Debtors' Ex. A, B, C, D.) Therefore, Debtors must pay Ford adequate protection payments of $200 per month for the Escape and $150 per month for the Windstar. Those amounts were offered in Debtors' Amended Chapter 13 Plan. As earlier noted, § 1326 requires a debtor to make adequate protection payments directly to the secured creditor

9

"[u]nless the court orders otherwise." 11 U.S.C. § 1326(a)(1)(C). The Bankruptcy Judges in this district have a standing order directed to the Chapter 13 Trustees which states that payments shall be made pre-confirmation directly to the secured creditor if the debtor's plan so provides. Debtors' plan in this case provides for adequate protection payments to be made to the trustee and for the trustee to pay the secured creditor before and after confirmation. (Debtors' Ex. J.) Therefore, so long as Debtors continue their proposed plan payments to the trustee, the trustee will distribute the adequate protection payments to Ford.

## CONCLUSION

For the foregoing reasons, this Court concludes a debtor must provide a creditor with adequate protection payments under § 1326(a)(1)(C) of the Bankruptcy Code in the amount the collateral depreciates within the first month after the filing of the bankruptcy petition. In this case, therefore, the monthly payments required post petition are $200 for the Escape and $150 for the Windstar.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 23rd day of May 2007